MARY E. MANN, Administratrix, etc., Respondent, *v.* The PRESIDENT, MANAGERS AND COMPANY of the Delaware and Hudson Canal Company, Appellant.

M., plaintiff's intestate, who was an engineer in defendant's employ, was killed by the collision of the train he was running with freight cars stand-

ing on the track of defendant's road at O. The accident occurred on a dark and foggy night. A freight train was being made up at O. and the main track and switch were both occupied. The usual signal to stop a train was the swinging of a red lantern. In addition, the rules of the company required its flagman on foggy nights to use torpedoes which were provided for that purpose. There were three brakemen upon the freight train, two of them regular brakemen, and one, T., an extra man; it was defendant's custom to keep extra men at O. to supply the place of regular brakemen, sick or absent. T., about a week before the accident, applied to defendant's general train dispatcher for a position as brakeman and was advised that he might get a job at O., to which place he went and reported to the yard-master, and he had prior to the accident made two or three trips as brakeman. He was selected by the conductor of the freight train to take the place of a regular brakeman. The yard-master requested the conductor to send out a flagman to flag the expected train. One of the regular brakemen started to do this, but the conductor directed him to remain and sent T. The latter did not take or use a torpedo, and had not been informed of, and did not know of the rule requiring such use; he had never flagged a train in the night except the second night before, on which occasion the conductor found fault with, and discharged him for not obeying orders. T. failed to properly signal the approaching train, and this omission occasioned the accident. *Held,* that the evidence justified the submission to the jury of the question as to the negligent performance, by defendant, of the duty it owed to its servants, to use due care in the selection of competent co-servants.

(Submitted February 5, 1883; decided March 6, 1883.)

APPEAL from judgment of the Supreme Court in the third judicial department, entered upon an order made May 2, 1882, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for alleged negligence causing the death of Judson W. Mann, plaintiff's intestate. Mann was an engineer in defendant's employ. While running the engine drawing a passenger train, he was killed by a collision of his train, with freight cars standing on the track at Oneonta, where a freight train was being made up.

The facts appearing as to the circumstances of the accident, are stated substantially in the opinion.

*Henry Smith* for appellant. The motion for nonsuit should

have been granted.   No cause of action was proved.  '(*Harvey v. N. Y. C., etc.*, 88 N. Y. 481.) The conductor of the train being made up under his direction was a co-employe of Mann, and no recovery should have been allowed for any thing resulting from his fault.  (*Tinny,* 52 N. Y. 632; *Besel,* 70 id. 174; *Sammon,* 62 id. 254; *Henry v. S. I. R. R. Co.*, 81 id. 373; *Crispen v. Babitt,* id. 516; *Murphy v. B. & A. R. R. Co.*, 88 id. 146.)

*L. L. Bundy* for respondent.   The motion to nonsuit was properly denied.  (*Flike v. B. & A. R. R. Co.*, 53 N. Y. 549; *Booth v. B. & A. R. R. Co.*, 73 id. 38; *Painton v. Northern R. R. Co.*, 83 id. 7, 14.)   The question of negligence is one for the jury, whether it depends upon conflicting evidence or inferences to be drawn from circumstances.  (See *Payne v. Troy & Boston R. R. Co.*, 83 N. Y. 572, 574; *Hain v. Smith,* 25 Hun, 146; *Brickner v. N. Y. C. R. R. Co.*, 2 Lans. 512; *Laning v. N. Y. C. R. R. Co.*, 40 N. Y. 521, 528–9, 532–3.)   It was the duty of the defendant to use such machinery, apparatus, tools, appliances and means as are suitable and proper for the prosecution of the business in which its servants were engaged with a reasonable degree of safety to life, and security against injury.  (*Gilman v. The Eastern R. R. Co.*, 10 Allen, 239; *Cone v. D. L. & W. R. R. Co.*, 81 N. Y. 206; 15 Hun, 172, 174; *Walsh v. Kelly,* 49 N. Y. 556, 558; *Requa v. City of Rochester,* 45 id. 130, 137; *Ayrault v. Pacific Bank,* 47 id. 570, 576; *Hoyt v. Railroad Co.*, 57 id. 679; *Walsh v. Mead,* 8 Hun, 394.)   It is required to furnish competent and trusty servants to run the road; and if it is guilty of negligence in the performance of that duty, then it is responsible to the servants who are injured in consequence of the neglect and incompetency of that servant whom they have thus employed.  (*Jones v. N. Y. C. R. R. Co.*, 22 Hun, 284; *Flike v. B. & A. R. R. Co.*, 53 N. Y. 549, 553, 555; *Booth v. B. & A. R. R. Co.*, 73 id. 38; *Mehan v. S. B. & N. Y. R. R. Co.*, id. 585; *Kain v. Smith,* 80 id. 458; *Fuller v. Jewett,* id. 46, 52; *Crispin v.*

*Babbitt*, 81 id. 516, 521; Wood's Master and Servant, §§ 438, 451, 453; *Berea Stone Co.* v. *Kraft*, 31 Ohio St. 287; *Slater* v. *Jewett*, 85 N. Y. 73; *Oothof* v. *Wolf*, 22 id. 355, 360, 362; *Brickner* v. *N. Y. C. R. R. Co.*, 2 Lans. 515; 49 N. Y. 672; *Laning* v. *N. Y. C. R. R. Co.*, id. 524.)

ANDREWS, J.   The jury found that the immediate negligence which caused the death of the plaintiff's intestate, was the omission of Townsend, the brakeman employed to go on the freight train which was being made up at Oneonta, to properly signal the train coming from Binghamton on which the intestate was engineer.   This train was past due nearly two hours. Both the main and side tracks of the defendant's road, at Oneonta, were occupied.   There was an engine on the side track, connecting by an open switch with the main track, on which the train from Binghamton was approaching, and there were loaded cars on the main track.   The way was blocked and a collision was inevitable, unless the movement of the coming train was arrested.   The accident occurred about 4:50 A. M.   The night was dark and foggy.   The usual signal to stop a train was the swinging a red lantern by a person standing in front of it before it reached the point of danger.   In addition to this signal, the rules of the company require that on foggy nights, flagmen should use torpedoes which the company had provided for that purpose.   It is admitted that Townsend who was sent out by Benedict, the conductor of the freight train, to signal the intestate's train, did not take with him, nor use torpedoes, although it was a case in which, according to the rules and under the circumstances, as the jury might properly find, torpedoes should have been used.   Whether Townsend went far enough in the direction of the expected train, or swung the lantern as he should have done, is not shown except by his evidence.   It is plain that the plaintiff's intestate did not see the signal if it was given, and the evidence tends to show that he was at his post discharging his duty.   The signals from his train were heard for several miles before it reached Oneonta.   The station signal, and signal for brakes on approach-

ing that station, were given as usual, and Townsend testified that as the train passed him, he saw a person in the usual place of the engineer with his hand on the throttle of the engine. The credibility of Townsend was seriously impaired on his cross-examination, and the jury had doubtless a right to conclude that he did not use proper diligence in giving the lantern signal on the occasion in question. They were, therefore, justified in finding that the accident was attributable to the neglect to give proper signals, and also that there was no contributory negligence on the part of the deceased.

But the court properly charged that the defendant was not liable for the negligence of Townsend, unless he was an incompetent person to be sent to flag the train, and his employment for that purpose was the negligent act of the defendant. The general facts in respect to the employment of Townsend, are, that about a week before the collision, he applied to the general train dispatcher of the defendant at Albany, who was authorized to employ men, for a position as brakeman on defendant's road, and was in substance informed that if he went to Oneonta he might get a job. It was the custom of the company to have extra men at Oneonta to supply the place of brakemen sick or temporarily absent. Townsend went to Oneonta and reported to Richmond, the yard-master there. He had made two or three trips as brakeman on defendant's road prior to the time of the collision. His name was entered on the books of the defendant as an extra man. He was selected on the morning of the accident in question by Benedict, the conductor of the train which was to start from Oneonta for Binghamton, to take the place of one Lynch, a regular brakeman who was sick. There were two competent and experienced brakemen, Brewer and English, making with Townsend the usual number. It was the practice where a regular brakeman was disabled or prevented from acting, to select from among the extra men a brakeman to act in his place, and the selection of Townsend was made pursuant to the practice. Before the collision, Benedict, the conductor, and the three brakemen, including Townsend, met at the yard to make up the train, and Rich-

mond requested the conductor to send out a flagman to flag the expected train. One of the two regular brakemen started to do this, but the conductor directed him to remain to assist in making up the train and instructed Townsend to signal the train, and he started to do it, taking a red lantern. There is no reasonable doubt upon the evidence that Townsend was an incompetent and unsuitable person to discharge the important and responsible duty of flagman. He was about twenty-one years old, with scarcely any experience as a brakeman or flagman, and had not been informed of and did not know of the rule requiring the use of torpedoes. He had never flagged a train, in the night, except the second night before, when he was acting as brakeman on a train on defendant's road on which occasion the conductor found fault with him for not obeying orders, and discharged him, as the evidence tends to show, for that reason.

It is claimed by the defendant that assuming the incompetency of Townsend, his selection for the duty of flagging the intestate's train, was the negligent act of Benedict, the conductor, and that the defendant having furnished other competent and experienced brakemen, who might have been selected by Benedict, the company is not liable. We think this claim cannot be supported, in view of the doctrine now firmly settled in this State, that no duty belonging to the master to perform for the safety and protection of his servants can be delegated to any servant of any grade, so as to exonerate the master from responsibility to a co-servant who has been injured by its non-performance. The duty to use due care in the selection of competent servants, is one of the master's duties. The duty of selection, in case of corporations, must be delegated. But any negligent act or omission in its performance, is the act or omission of the master. In *Laning* v. *N. Y. C. R. R. Co.* (49 N. Y. 521; 10 Am. Rep. 417), the actionable negligence upon the case as presented, was found in the employment of Westman, who had after his original employment by the defendant, become incompetent by intemperate habits, and who selected the incompetent men to build the scaffold. But

*Flike* v. *B. & A. R. R. Co.* (53 N. Y. 549 ; 13 Am. Rep. 545), and *Booth* v. *B. & A. R. R. Co.* (73 N. Y. 38 ; 29 Am. Rep. 97), show that if Westman had been a fit man to be intrusted with the duty, his negligent employment of incompetent men would have rendered the defendant liable. In the *Flike Case*, Rockefeller was a competent man, but his omission to see that the proper number of brakemen were sent with the train, was held to be an omission of the master for which the principal was responsible. In the *Booth Case*, arising out of the same accident as the *Flike Case*, the point was made that as it then appeared, that by the rules of the company, it was the conductor's duty to report to Rockefeller any deficiency of brakemen, and that the conductor omitted to perform this duty, the omission was that of a co-servant merely ; but this court overruled the point on the ground that no matter whose immediate negligence it was to start the train without sufficient brakemen, it was in law the negligence of the defendant. In *Fuller* v. *Jewett* (80 N. Y. 46 ; 36 Am. Rep. 575), the same rule was applied in respect to the duty of the master to provide suitable machinery and keep it in repair. The work of repairing the engine in that case was committed to competent mechanics with proper instructions, but they failed to perform the duty properly, and the master was held responsible for the omission. In this case it does not appear that Benedict knew that Townsend was an unfit person to be sent to flag the train. The company had apparently, without any inquiry as to his qualifications, put him in the position of an extra man, who might be selected by a conductor to fill a vacancy, thereby giving an assurance of his competency for the position. Even if Benedict was negligent in selecting Townsend, he was in so doing acting in place of the master, and his negligence was the defendant's negligence. The power to select a temporary brakeman from the extra men was conferred upon Benedict. The brakemen were subject to his orders. It would be unreasonable that the master should confer upon a subordinate the power to select a man for so important a duty as that intrusted to Townsend, and be exonerated from responsibility on the ground

that the subordinate was negligent in its performance.  The primary wrong was the placing of Townsend among the extra men without inquiry as to his fitness, or instructing him as to the rules of the company.  The negligence of Benedict, if it existed, was secondary and co-operative merely.  These views cover the questions presented.

We think there was no error committed on the trial, and that the judgment should be affirmed.

All concur, except EARL, J., not voting, and RAPALLO, J., absent.

Judgment affirmed.