Rebecca Sutherland, as Administratrix, etc., Respondent, *v.* The Troy and Boston Railroad Company, Appellant.

*Court of Appeals, February* 24, 1891.

Reversing 54 Hun, 639, mem.

1. *Master and servant. Inference.*—The jury is not at liberty to infer, from the fact that a telegraph operator was only seventeen years of age, that the company was negligent in employing him, where it appeared that he had had more than a year's experience, had been well recommended by his former employers, and had discharged his duties intelligently.

2. *Same. Contributory negligence.*—The violation, by an engineer, of the known rules of the company, which, if observed by him, would have resulted in his avoiding the collision, renders him guilty of contributory negligence.

Appeal from judgment of the supreme court, general term, third department, affirming judgment for plaintiff entered upon verdict of jury at circuit.

*John H. Peck*, for appellant.

*Chas. E. Patterson*, for respondent.

PER CURIAM.—The collision which occasioned the casualty was at a point about two and one-half miles east of Petersburgh Junction.    If the presence of the trains No. 1 and No. 6 at the place of collision was attributable in any degree either to the omission by the company to make suitable and adequate regulations for the running of its trains, or to the omission of the train dispatcher at Troy to exercise proper care to notify train No. 1 to await at Petersburgh Junction the arrival of train No. 6, a case was made out on the point of the defendant's negligence.    But this would not sustain the action provided the presence of train No. 1 at the place of collision was to any extent attributable to the negligence of Sutherland, the plaintiff's intestate.    It would then be the case of concurring negligence on the part of the company and the person injured.

We are inclined to the opinion that it was a question for the jury on the point of the defendant's negligence.    It is true that if Johnson, the telegraphic operator at Petersburgh Junction, had strictly followed rule 38, and obeyed the order to "flag and hold train No. 1," the accident would not in all probability have happened.    He, however, interpreted the order as designed to hold No. 1 for No. 2, and not generally, and when No. 2 had arrived and he had procured permission from the train dispatcher at Troy to permit No. 2 to pass on to Hoosick, then, supposing the original order fulfilled, he did not replace the red flag, as he ought to have done.    But the red flag signal was one of the means of notifying an approaching train to stop, but when special orders were given to control the running of trains, upon the observance of which the lives of persons depend, the jury, we think, had a right to determine whether the company had discharged its whole duty by giving the order to the oper-

ator, without communicating it to the trainmen at some point before the train reached Petersburgh Junction, which, so far as appears, might have been done after the order to hold the train had been made.

The jury, within the cases of Sheehan *v.* N. Y. C. & H. R. R. R. Co., 91 N. Y. 332, and Dana *v.* Same, 92 Id. 639, were entitled to say whether the company performed the full measure of its duty, in view of all the circumstances, in taking no means to notify train No. 1 of the order, except by the order to Johnson, relying exclusively on his performance of his duty.

The contributory negligence of Sutherland is the difficult point in the case. If this question was not in the case we think the judgment would have to be reversed for error in submitting to the jury the question of the competency of Johnson. The only suggestion of his incompetency made by the plaintiff is founded upon the fact that he was but a little over seventeen years of age. It was shown that he had had more than a year's experience as telegraph operator; that for more than three months prior to the accident he had been the operator of the defendant at this point and had discharged his duties intelligently, to the entire satisfaction of the company ; that the company employed him on the recommendation of the manager of the Western Union Telegraph Company at Rutland, and of the train dispatcher of the D. & H. C. Co., and that he was perfectly conversant with the rules, and was a " first-class operator," and it also appeared that young men were generally better operators than older men. The plaintiff did not undertake to controvert the proof of the defendant on the subject.

We think under the circumstances the jury could not be permitted to infer that Johnson was incompetent in fact from his age only, or that the company was negligent in employing him, or to speculate whether if the operator had been a man of mature years or judgment he would have been less likely to have committed the mistake which Johnson did.

But aside from this error it seems to us that the plaintiff did not meet the obligation resting upon her of presenting a case from which the jury could fairly find that her intestate was free from any negligence which contributed to his death. Of course the jury had a right to consider that the intestate was not here to explain the circumstances and to make the most favorable inferences which the evidence permitted, and such inferences also from obscure and doubtful circumstances, relating to his conduct which the jury might not be inclined to draw if fuller explanation was possible. But admitting this it remains as an incontrovertible fact, founded upon written evidence in connection with admitted circumstances, that the deceased was brought into the peril which caused his death in part by his disregard of the written rules of the company with which he was acquainted, and which if they had been observed by him would have resulted in his stopping his train at Petersburgh Junction and so have avoided the collision.

Rule 15 is as follows: " The speed of freight trains must not exceed fifteen miles per hour exclusive of all stops ; " and Rule 3 provides: " Freight trains must in all cases keep ten minutes out of the way of passenger trains."

Sutherland left Hoosick Falls with his train going east towards Petersburgh Junction at 8:22 A. M. He passed Petersburgh Junction, which was 4.95 miles from Hoosick Falls at 8:30, making the distance in eight minutes, which required a speed of thirty-five miles an hour. The collision occurred about two and one-half miles east of the junction, at 8:34 or 8:35. No. 6, with which No. 1 collided, was on its regular schedule time or nearly so, and if Sutherland had had this in mind he would have known that unless No. 6 was delayed a collision was inevitable. Sutherland's train was two hours behind time, and one explanation of his running his train at this speed may be that if he had been governed by the schedule time in going from Hoosick Falls to Petersburgh Junction he would have been compelled to stop

there to let passenger train No. 33, which was behind, pass, under rule 3, and he wanted to reach the next station or some station further east before his train would become subject to the ten-minute rule. He probably forgot that by so doing he was likely to encounter No. 6. It is proved and is undisputed that the rule as to speed governs belated trains as well as trains on time.

Some question is made as to the true construction of rule 15. We agree with the construction insisted upon by defendant's counsel, viz., that the speed, between stops, must not exceed fifteen miles an hour. The substantial meaning is that the speed of the train while in motion shall not exceed that rate. It was shown and it is evident that this exact rate could not be kept up at all times. In slowing up and starting the speed would necessarily be less than that prescribed, and the loss would have to be made up by going at a rate somewhat more than fifteen miles an hour at other times. But the rule could be substantially observed, and it appears that train No. 1 was scheduled for the whole distance between Troy and Vermont at a little less than fifteen miles an hour, although between stations in some cases the schedule rate was a little more. Between Hoosick Falls and Petersburgh Junction the schedule time was about twenty minutes, which would require a speed of a little more than fifteen miles an hour. There was a clear violation of rule 15 by Sutherland. If he had observed the rule two circumstances would have probably prevented the accident : *First*, he would have been required under rule 3 to take a side track at the Junction in order that No. 33, due there at 8:52, could pass him ; and *second*, train No. 6 would have met No. 33 and passed it at that point as usual, while No. 1 was at rest.

It seems to us impossible to say that the violation of the rule by Sutherland did not contribute to the accident. The rules are made as well to promote the business of the road as for the safety of employes. A train dispatcher at a dis-

tant point must to a considerable extent rely upon the rules being observed by train men, and his actions are naturally influenced by this assumption, and so it was in the present case, although the jury might say that his full duty was not discharged. It cannot be supposed that Sutherland was ignorant of the importance of observing the rules. He unfortunately rushed on to his destruction because he saw no red flag at the junction, not bearing in mind that in running at such a rate of speed he was violating a rule, and bringing himself within the peril which resulted in his death. It seems to us that upon the evidence the co-operating negligence of the deceased was an inference of law, and that the judgment should therefore be reversed and a new trial granted.

All concur.

