MARY ANN BURKE, as Administratrix, etc., of MICHAEL J. BURKE, Deceased, Appellant, *v.* THE SYRACUSE, BINGHAMTON AND NEW YORK RAILROAD COMPANY, Respondent.

*Railroads — negligence in moving a safety switch — fellow-servants — competency of a switchman — non-existence of rules.*

A railroad company employed in charge of a telegraph station at a single-track siding and highway crossing one Clark, a robust boy of seventeen, who was familiar with railroad tracks and switches, whose duty it was to report trains, receive and carry out telegraphic instructions, flag the crossing and operate a "safety Wharton switch," which connected the main track with the siding. He had become familiar with the operating of this switch, which was simple, the switch, of itself, keeping the main track closed, and requiring the lifting of a heavy iron ball on a lever to open the siding. Clark had managed the switch properly until, on a certain occasion, on the approach of a train which should have been kept on the main track, he was suddenly seized with the thought that the switch was set wrong, and impulsively, and with a view of preventing a catastrophe, rushed to the switch and raised the lever, sending the train upon the siding, where it collided with a waiting train, causing the death of the engineer of the moving train, whose legal representative sued the company for damages.

On appeal from a judgment of nonsuit,

*Held*, that the nonsuit was proper; that, as the evidence failed to show a want of competency on the part of Clark to perform the duties required of him, there was no question for the jury as to whether the railroad company was negligent in employing him at the place of the accident, or as to whether it exercised due care in the selection of the fellow-servants of the deceased;

That, as it appeared that Clark had sufficient time to do all the work required of him, and that at the time of the accident he was under no obligation to do anything with the switch, there was no question for the jury as to whether the company employed a sufficient number of men at the point in question, or as to whether it was negligent in failing to employ a sufficient number of men;

That, as it did not appear that the company, in the exercise of reasonable care, could have foreseen the necessity of a rule to prevent an employee from opening the switch on an improper occasion, the evidence was insufficient to carry the case to the jury upon the ground that the company had been negligent in omitting to adopt a rule or rules to guard against the accident in question.

APPEAL by the plaintiff, Mary Ann Burke, as administratrix, etc., of Michael J. Burke, deceased, from a judgment of the Supreme Court, entered in the office of the clerk of Onondaga county on the 24th day of May, 1892, upon a nonsuit granted at the Onondaga Circuit, dismissing the plaintiff's complaint upon a trial before the court and a jury.

The action was brought to recover damages for an alleged negligent killing of plaintiff's intestate, who was an engineer in defendant's employ, on the 3d day of November, 1890. Rock Cut is a station some three miles south of Syracuse, on defendant's single-track road, running from Syracuse to Binghamton. It is a telegraph station, and there is a siding there so arranged that trains may pass each other. The highway from Syracuse to Jamesville crossed the track near the station where there was a cabin of two rooms, in one of which was telegraphic instruments, and the other room was sometimes used for a post-office. The siding leaves the main track some half a mile to the north of the cabin, and joins it again a few rods to the south. At this point a safety Wharton switch was in use at the time of the accident, which has a lever with a heavy iron ball at the end which lies upon the ground when the main track is closed. To connect the main track and the siding this lever is raised to a perpendicular position and held, otherwise the weight of the ball drags it to the ground and closes the main track. Martin Clark was in charge of the station at the time of the injuries, and it was his duty to report trains, and to receive and carry out telegraphic instructions from the train dispatcher at Syracuse, and to flag the crossing, and to attend to some other duties. His time of service was from seven o'clock in the morning until six o'clock in the evening, and during that period some ten trains passed the

station. About six o'clock P. M., on the 3d of November, 1890, a coal train going southward halted on the side track about twenty-five feet from the switch, and awaited the passage of the regular passenger train from the south upon which the deceased was the engineer going northward. The trainmen visited the shanty of the operator and chatted with him until he saw the passenger train approaching from the south when he left the shanty with his lantern to signal the train in accordance with his custom; having reached the crossing he suddenly was seized with the thought that the switch was set wrong for the passenger train, and impulsively, with a view of preventing a catastrophe, he rushed up to the switch and lifted the lever thereof and held it in position long enough to divert the train from the main track into the stationary locomotive of the coal train, thereby causing the death of the plaintiff's intestate. As soon as Clark saw the locomotive take the side track he realized what he had done; recovered his presence of mind and dropped the lever, thus saving the coaches containing the passengers on the main track. Clark was seventeen years of age on the 18th of August, 1890; was tall, large and robust, and appeared to be nineteen years of age. He came from Auburn where he had lived with his father within 200 feet of a railroad, and had for eight years, and "was familiar with the railroad tracks, and had frequently seen side tracks and switches operating." He attended the public schools until he was sixteen years of age, and having decided to become a telegraph operator studied for a year and a half under the tuition of the train dispatcher at Auburn, and became familiar with receiving and sending dispatches, and for a month or more worked at a railroad station at Auburn familiarizing himself with practical railroad work, when he applied to the defendant for employment. Mr. Ferris, defendant's agent, made some examination of him and employed him and sent him to Tully where he remained for a month performing active service, sending and receiving railroad and commercial telegrams; signalling trains, reporting cars and doing other work incident to the station duties. From there he was detailed for duty at Rock Cut to take the place of one Fisher, a young man nineteen years of age, who had for a considerable time conducted the business of the station successfully. Upon arrival at Rock Cut Clark was informed by Fisher as to the several duties devolving upon him and among

others the duty of operating the switch was explained to him and all its workings, and that it was to be opened in the morning to permit a north-bound coal train to be side-tracked in order to allow a passenger train, which awaited its arrival on the main track, to pass south. He informed Mr. Ferris, his superior, that Fisher had fully informed him as to the duties and that he well understood them; and he successfully operated the switch each morning prior to the accident, locked it each night; and he testified that "At the time of the accident the main track was unbroken before I lifted the ball, and if I had left it alone the express train would have gone right by as usual; * * * when I got there I knew as a matter of fact that the main track was unbroken, and that lifting the ball would break the main track, and send the express train on to the branch. That I didn't think of at the moment. * * * I fully understood its operation. There was nothing difficult to understand about it." Hoyt, who had previously been employed by defendant at Rock Cut, and who had been engaged in railroad business for ten years at different stations, testified that he was familiar with the operation of Wharton switches and other switches, and also that "a man of ordinary intelligence ought to learn to open and shut the switch after it was shown him a few times ought to be able to attend to it in short order. If he did operate it, and operate it right, that would show that he had sufficient experience in that line." At the close of the evidence the defendant moved for a nonsuit on the grounds :

*First.* "That the plaintiff has not established sufficient facts to constitute a cause of action."

*Second.* "That the evidence fails to show any actionable negligence on the part of the defendant."

*Third.* "That the evidence shows that the death of the plaintiff's intestate was occasioned through the negligence of a fellow-servant of the deceased."

*Fourth.* "That the plaintiff's intestate by accepting employment from the defendant assumed the risk of any negligence of which a fellow-servant might prove guilty."

*Fifth.* "That the evidence fails to show that the wrongful act of the boy, Clark, could in any way have been foreseen by the defendant, or that there was anything from which the defendant could

have anticipated that this accident would have occurred or could have arisen." Thereupon the court intimated that there was no case for the jury. Whereupon the plaintiff asked " To go the jury upon the question whether the railroad company was negligent in the employment of this man Clark at that place; whether it exercised due care in the selection of fellow-servants of the deceased."

*Second.* " Upon the question as to whether the railroad company employed a sufficient number of men at this point; whether it was not negligent in failing to employ a sufficient number of men."

*Third.* " Whether it was negligent in failing to adopt and notify Clark of the existence of the rule requiring the switch to be locked, and the requiring a switchman to be at his post upon the passage of trains on the main track." The requests were refused and thereupon the court directed a nonsuit, and judgment thereon has been entered in favor of the defendant.

*W. S. Andrews,* for the appellant.

*Louis Marshall,* for the respondent.

HARDIN, P. J. :

Upon the occasion of the injuries no duty rested upon Clark to open the switch. His act in raising the ball and breaking the main track was voluntary, thoughtless and mistaken. Nothing appears in the case showing that he had not physical power to perform all the acts and duties required of him at the station, or that he was not mentally fit for the position assigned to him by the defendant. Judged by the rule laid down in *Coppins* v. *N. Y. C. & H. R. R. R. Co.* (122 N. Y. 557), the evidence fails to show a want of competency on the part of Clark to perform the duties required at the station. The observations made by the learned counsel for the respondent seem appropriate and pertinent where he says: " The defendant could not make a psychological examination of Clark, or delve into the secret recesses of his brain to ascertain whether, at some future period, he would for an instant become the prey of a delusion and work destruction. It was no more bound to anticipate this unnatural occurrence than it would have been the act of Clark, had he in a moment of temporary abberation drawn a pistol and killed the plaintiff's intestate."

In *Harvey* v. *N. Y. C. & H. R. R. R. Co.* (88 N. Y. 486), it was said : " The duties of a switchman are not complicated or difficult, and there can be no doubt that on the day in question Baldwin was entirely competent to perform the duties imposed on him. It appears from his own evidence that his failure to close the switch on the day in question did not arise from any inability on his part to perform the work he was set to do, but that such failure was the result of sheer inattention and carelessness on his part." " He was a man of, but fifty-six years of age, and there is no suggestion that he was not possessed of ordinary intelligence." After further commenting on the circumstances of that case the court observed : " There is no evidence in this case which warranted the jury in finding that any act of neglect on the part of the defendant contributed in any manner to produce the injury which resulted in the death of plaintiff's intestate." We think the rule there laid down is applicable to the facts before us, and we are of the opinion that the evidence was insufficient to warrant the jury in finding that the defendant had been negligent in employing Clark or leaving him in charge of the station at the time of the accident.

In *Sutherland* v. *The Troy & Boston Railroad Co.* (125 N. Y. 739), it was said : " We think, under the circumstances, the jury could not be permitted to infer that Johnson was incompetent in fact from his age only, or that the company was negligent in employing him, or to speculate whether, if the operator had been a man of mature years or judgment, he would have been less likely to have committed the mistake which Johnson did."

We think *Mann* v. *The President, etc., of D. & H. C. Co.* (91 N. Y. 500), differs from the case before us, as in that case there was no reasonable doubt of the fact that Townsend was an " incompetent and unsuitable person to discharge the important and responsible duty of flagman." And it appeared he had not been informed of and did not know of the rule requiring the use of torpedoes and that he had never flagged a train in the night, except the second night before, when he was acting as flagman on a train, on which occasion he failed to obey orders, and it was, therefore, held : " That the evidence justified the submission to the jury of the question as to the negligent performance, by defendant, of the duty it owed to its servants, to use due care in the selection of competent co-servants."

Nor do we think the absence of more men at the station "contributed in any manner to produce the injury" complained of. (*Harvey v. Central Road, supra.*) It appears that Clark had sufficient time to do all the work that was required of him at the station, and that at the time of the accident he was under no obligation to do anything with the switch. He was at leisure as the train approached and if he had remained chatting with the trainmen on the coal train no accident would have taken place.

Nor do we think the defendant was negligent in not having adopted a rule as to the switch in question, as it did not appear that the defendant, in the exercise of reasonable care, could have foreseen the necessity of such a rule. (*Morgan v. The Hudson River Ore & Iron Co.*, 133 N. Y. 666 ; *Berrigan v. N. Y., L. E. & W. R. R. Co.*, 131 id. 582.) In the latter case it was held : "It cannot be assumed that it can by rule guard against and prevent every injury to them (employees)." No evidence was given tending to show that such a rule was necessary to prevent an employee from opening the switch on an improper occasion. Clark had a key to the switch, and if it had been locked it is mere conjecture to say that he would not have reached the switch in time to make use of the key, even in the event he had found that the switch was locked. We think the evidence was insufficient to carry the case to the jury upon the ground that the defendant had been negligent in omitting to adopt a rule or rules to guard against such an accident as the one that occurred.

It was said by this court in *Forey v. S. B. & N. Y. R. R. Co.*, (12 N. Y. St. Repr. 201), that "it is the duty of an employer engaged in a complex business, to establish rules for the protection of employees. But the business in which this plaintiff was engaged was not complex, and it is difficult to see how any rule could have given him more information than he might easily have obtained by ordinary attention to the operations in which he was engaged." That case was affirmed in 122 N. Y. 667. We may add that it is difficult in the case in hand to discover any solid ground upon which it may be averred that the defendant was negligent in not having promulgated a rule requiring the switch to be locked on each and every occasion when the same was used. It appears by the evidence that Clark was accustomed to lock it on leaving it nights, and that

custom was apparently to prevent the switch being interfered with by outsiders when no one was present to detect the interference.

We are of the opinion that the trial judge properly refused to submit any of the questions to the jury mentioned by the plaintiff at the close of the evidence, and that no error was committed in directing a nonsuit.

MERWIN, J., concurred; MARTIN, J., not sitting.

Judgment affirmed, with costs.