McINTOSH, RESPONDENT, *v.* JONES, APPELLANT.

(No. 2,480.)

(Submitted January 17, 1908. Decided February 1, 1908.)

[93 Pac. 557.]

*Master and Servant—Personal Injuries—Duty of Master—Selection of Fellow-servants—Appeal—Briefs—Rules.*

Appeal—Briefs—Rules.
  1.  A brief which substantially complies with Rule X of this court, with relation to its contents, is sufficient.
Master and Servant—Personal Injuries—Negligence of Fellow-servants—Master's Liability.
  2.  In the absence of a statute to the contrary, a master is not liable to one servant for injury caused by the negligence of another servant in the same common employment, unless the negligent servant was the master's representative, or the master was negligent in employing or retaining him.
Same—Single Act of Negligence—Liability of Master.
  3.  A servant's single act of negligence, committed after the hiring and without the master's knowledge, is not sufficient to charge the latter with lack of ordinary care in selecting the former as his employee.
Same.
  4.  The single, exceptional act of a servant in releasing his hold on a piano while helping to move it, when he should not have done so, did not prove him to be incompetent for that class of work.
Same—Selection of Fellow-servants—Duty of Master.
  5.  Upon a transfer company rested the duty of exercising ordinary care in the selection of a helper to assist one of its employees in moving a piano.
Same.
  6.  An employee of a transfer company was not entitled to recover damages from his employer for injuries alleged to have been sustained by reason of defendant's failure to exercise ordinary care in

selecting a reasonably competent fellow-servant to assist plaintiff
in moving a piano, where it appeared that all that was required of
the helper was strength and ordinary intelligence, which he pos-
sessed, and that plaintiff was injured by the assistant releasing his
hold on the piano contrary to plaintiff's orders.

*Appeal from District Court, Silver Bow County; Geo. M.
Bourquin, Judge.*

Action by Edgar McIntosh against John O. Jones and an-
other, partners, under the firm name of the Jones Transfer
Company. From a judgment for plaintiff against defendant
John O. Jones, and an order denying a new trial, defendant
John O. Jones appeals. Reversed, and new trial ordered.

*Mr. John J. McHatton,* for Appellant.

The work to be performed by plaintiff and his assistant re-
quired no special skill or ability, and plaintiff's own testimony
showed that his assistant did everything that an ordinarily pru-
dent man could have done. The mere occurrence of the accident
did not make defendant liable. (12 Ency. of Law, 1021 P. C.;
*Hatheway* v. *Illinois Cent. R. Co.,* 92 Iowa, 340, 60 N. W. 651;
*Curran* v. *Merchants' Mfg. Co.,* 130 Mass. 374, 39 Am. Rep.
457; *Lee* v. *Detroit Bridge Co.,* 62 Mo. 565; *Cooper* v. *Milwau-
kee etc. R. Co.,* 23 Wis. 668; *Acme Coal Min. Co.* v. *McIver,* 5
Colo. App. 267, 38 Pac. 596; *Wright* v. *New York Cent. Ry. Co.,*
25 N. Y. 562; *Murphy* v. *St. Louis etc. Ry. Co.,* 71 Mo. 202.)
Defendant was not a guarantor, nor was he responsible as an
insurer. (Labatt on Master and Servant, 188, 189, 397, 398;
*Gier* v. *Los Angeles etc. Ry. Co.,* 108 Cal. 129, 41 Pac. 22; *Mat-
thews* v. *Bull* (Cal.), 47 Pac. 773; *Stevens* v. *San Francisco &
N. P. R. R. Co.,* 100 Cal. 554, 35 Pac. 165; *Thomas* v. *Herrall,*
18 Or. 546, 23 Pac. 497.) There is, in the absence of express
contract, absolutely no responsibility upon the part of an em-
ployer and there is no presumption that a fellow-servant is in-
competent or careless. (*Beasley* v. *San Jose Fruit Packing Co.,*
92 Cal. 388, 28 Pac. 485; *Hermann* v. *Port Blakely Mill Co.,* 71
Fed. 853, 856; *Tyler* v. *Last Chance Min. Co.,* 71 Fed. 856.)

The injury must result from incompetency, and not from negligence. (*Central R. R. Co.* v. *Keegan,* 82 Fed. 174, 27 C. C. A. 105.) The rule is well settled that a single act of negligence is not enough. (*Baulec* v. *New York etc. R. R. Co.,* 59 N. Y. 356-363, 17 Am. Rep. 325; *Holland* v. *St. Paul Ry. Co.,* 100 Cal. 240, 34 Pac. 666; *Stevens* v. *San Francisco Ry. Co.,* 100 Cal. 567, 35 Pac. 165; *Hermann* v. *Port Blakely Mill Co,* 71 Fed. 856; *Kindel* v. *Hall,* 8 Colo. App. 63, 44 Pac. 781; *Cosgrove* v. *Put-. nam,* 103 Cal. 268, 37 Pac. 232; *Gier* v. *Los Angeles etc. Ry. Co:,* 108 Cal. 134, 41 Pac. 22.) The negligence resulting in the acci-. dent was that of plaintiff and his coemployee, for which he can- not hold defendant responsible. (*Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515; *The Elton,* 142 Fed. 372; *Curran* v. *Merchants' Mfg. Co.,* 130 Mass. 374, 39 Am. Rep. 457; *Gier* v. *Los Angeles Co.,* 103 Cal. 129, 41 Pac. 22.)

*Messrs. Maury, Templeman & Hogevoll,* for Respondent.

Where the work in which the servant is to be employed is such as to endanger the lives and persons of coemployees, the master, before engaging such servant, is required to make reasonable investigation into his fitness and skill. (*Indiana Mfg. Co.* v. *Millican,* 87 Ind. 87; *Western Stone Co.* v. *Whalen,* 151 Ill. 472, 42 Am. St. Rep. 244, 38 N. E. 241; *Mann* v. *Delaware & H. Canal Co.,* 91 N. Y. 495; *Norfolk & W. R. Co.* v. *Nuckols,* 91 Va. 193, 21 S. E. 342; *Alabama & F. R. Co.* v. *Waller,* 48 Ala. 459; *The Anaces,* 93 Fed. 240, 34 C. C. A. 558; *Nutzmann* v. *Germania Life Ins. Co.,* 78 Minn. 504, 81 N. W. 518; *Fraser* v. *Schroeder,* 163 Ill. 459, 45 N. E. 288; *Postal Tel. Cable Co.* v. *Coote* (Tex. Cr. App.), 57 S. W. 412; *International & G. N. R. Co.* v. *Martinez* (Tex. Cr. App.), 57 S. W. 689; *Fines* v. *Woolfolk,* 73 Hun, 549, 26 N. Y. Supp. 181.)

MR. JUSTICE SMITH delivered the opinion of the court.

The above-entitled action was instituted in the district court of Silver Bow county to recover damages for personal injuries

received by plaintiff through the negligence of a fellow-servant.

Plaintiff and his fellow-servant were engaged in moving a piano. Plaintiff, in his complaint, alleges: "That the defendant sent the said man and employed him to assist the plaintiff, either knowing him to be lacking in all skill in and about the said business, or negligently failed to find out whether the said man had any skill in and about the said business or not. That, while moving said piano * * * the plaintiff and said man * * * working together, the said man negligently let go the piano when the plaintiff was under the same, and when the said man, if he had been [a] a skillful man at this business, could have held the said piano off of the said plaintiff, and by and through the negligence of said man * * * in thus letting go negligently of the said piano, and through the negligence of the said defendants in either knowing the said man to have no skill at the work, or in negligently failing to find out if he had any skill or did not have any skill, the piano fell upon the plaintiff," and injured him. It is further alleged: "That, until the said man * * * negligently let go of the piano * * * plaintiff did not know that he was lacking in skill and believed him to be in all respects a skillful and experienced man at the trade of moving pianos, * * * for which the defendants had employed him to work, and the plaintiff relied, when going to work with said man, upon the defendants that they would and did furnish him with a good and skillful and experienced fellow-servant in and about the said work."

For answer defendants first denied each and every allegation of the complaint, and thereafter set forth certain affirmative matters, not necessary to be considered in deciding the case, except to this extent: 1. The answer contains an allegation "that, while the plaintiff and said man were attempting to move the piano, they did, through their own fault and lack of skill and attention, allow the same to fall upon the plaintiff." 2. It is therein set forth that plaintiff was injured "through his own lack of care in handling the piano, and that he knew all of the

facts and circumstances surrounding the attempt to remove the same and the capacity of said man who was assisting him, and that he voluntarily assumed all risk of injury which might result therefrom, and that he himself contributed to his own injury, in that it was, in part, through his own fault that said piano was allowed to slip and fall upon his leg; that the said man who was assisting plaintiff in moving the piano was negligent therein, and that he was a fellow-servant with the plaintiff, and that his negligence, together with that of the plaintiff, combined to bring about said accident and injury, and that plaintiff assumed all danger and risk of injury by reason of the employment of said man, or any negligence or lack of care upon his part.''

The replication admits that the man who was assisting plaintiff in moving the piano was negligent therein, and was a fellow-servant of plaintiff, but denies every other allegation of the answer. The trial resulted in a verdict in favor of plaintiff and against defendant J. O. Jones for $3,025, and from a judgment entered thereon and an order denying a motion for a new trial that defendant appeals. Many errors are assigned, but it will not be necessary to notice all of the specifications.

Plaintiff testified as follows, in part: "I worked for Jones for about two years prior to my injury, doing all kinds of transfer work, moving furniture, machinery, pianos, and so forth. Men ought to be experienced to move heavy freight and pianos, and should understand their business in order to be successful and not get hurt. * * * It takes experience and a long time for an ordinary man to become ordinarily skillful at that trade. * * * On the fourteenth day of June, 1905, in the morning, I was instructed to go down and unload a carload of furniture. Mr. Jones told me in the morning to employ another man, and go down there and unload this carload of furniture. So I did so. We worked the forenoon, and at noon Mr. Jones came to me and said: 'Mack, I want to take that man away from you that worked with you in the forenoon,' and he says: 'I will get you another man,' * * * and we went down after dinner, and

we had a load of furniture in the car, such as chairs. This new man that Mr. Jones got me and I went down; so we went down there and had this small load and unloaded it and came back to the city; and before we struck the stand Mr. Jones and his son, who stood on the sidewalk, * * * said to me: 'There is a piano at the Munroe School'; said for me to take this 'man and move the piano because they were overstocked with work that day, so I did so, according to instructions. We went to the place where the piano was, and * * * put the piano on this truck and rolled the piano to the brim of the stairs, and, of. course, I went ahead of the piano and this here fellow, I told him to take the hind end of the piano, and, when I got ready, I said, 'Break the piano over, and be very careful, as we are in a dangerous place,' and he broke it over. While we two were moving the piano, this man acted all right so far as I could see. When we started the piano down the steps, he just merely let go of it, and I was ahead of it, and I couldn't hold it as she broke over. * * * It never landed on the stairs, and shot right ahead. If he had had hold of it until it got over the stairs, we would have had a purchase on it and could have held it. * * * A man of experience in the position in which the other man was as the piano was going over the top step would have had hold of the handles and held back for all his might. By so doing he would have checked the speed, and he and I could both have held the piano and taken it down safely. * * * I judge the piano weighed somewhere in the neighborhood of eight hundred pounds. * * * When the piano came forward, my limb got underneath the piano truck, and the piano slid down the steps on my limb, and tore my foot off, and bruised my leg and broke some bones. My leg was taken off there, about four or five inches below the knee.'' On cross-examination he testified: ''I started myself and went down the street to see if I could locate a man. I could not locate one suitable for me, so I came back and told Mr. Jones I couldn't get a man. * * * Then Mr. Jones went out for five or ten minutes, and he brought back a man about the same height as myself, fair, and a strong,

robust-looking fellow, who weighed one hundred and seventy pounds, I should judge. He was a stout-looking man. From outward appearances, he seemed to be a capable man, and he was sober, and I thought he was all right, judging from his appearance. While he was helping me to move this load of furniture, he was all right; didn't show any lack of intelligence for work of that kind. I had moved pianos before, quite a number of them. * * * I did not make any objection to moving this piano with this man. I was relying on Mr. Jones. I was satisfied when I started out with him that he was all right and reliable for the doing of that work. * * * Up to the time he let go of the piano, he acted as a man of intelligence, and had done everything in a proper way toward moving the piano, as far as I could judge. Prior to the time we began the operation of the piano, and during the time we were putting the piano on the truck, I told him that that was a dangerous operation—the moving of the piano—as we came downstairs, and I had warned him to be careful, and up to that time he had acted as though he was endeavoring to comply 'with my request.' "

Respondent's counsel suggest that appellant has not complied with Rule X of this court, in that his brief does not state where in the transcript the judgment can be found, and does not state the questions involved on the appeal, as directed by the rule. We find on page 6 of the brief the statement that the judgment may be found at page 23 of the transcript, and a copy of the judgment is there set forth. We think the statement of the case presents the questions involved substantially in compliance with the rule.

At the close of plaintiff's case the defendants moved for a nonsuit, on the grounds, among others, first, that the complaint does not state facts sufficient to constitute a cause of action; second, that there was no evidence that the man who assisted plaintiff was an incompetent or unskillful man to engage in such work, and, if he was incompetent, the plaintiff either knew it or had reason to know it, and assumed the risk;

third, that the evidence fails to show that the man engaged with plaintiff was unskillful, unfit, or incompetent for the work in which he was engaged, and fails to show that the defendants were lacking in the exercise of ordinary care in the selection and employment of said man; and, fourth, that, if plaintiff was injured through the act of the other man, it was a single act of negligence, and did not establish incompetence or lack of skill. This motion was overruled as to the appellant J. O. Jones. We think the motion should have been granted as to him, and our reasons may be stated generally, without taking up, in detail, the different grounds of the motion.

It is a settled rule of law, where not changed by statute, that a master is not bound to indemnify one servant for injuries caused by the negligence of another servant in the same common employment as himself, unless the negligent servant was the master's representative. (2 Labatt on Master and Servant, sec. 470.) While the reason for and origin of the foregoing rule are matters of dispute among courts and law-writers, the rule itself is not doubted. But the doctrine that a servant cannot maintain an action for injuries caused by the negligence of a coservant has always been conceded to be subject to an exception in cases where negligence on the master's part in employing or retaining in his employ the delinquent coservant is shown. (2 Labatt on Master and Servant, sec. 480.) Judge Bailey, in his work entitled "Master's Liability for Injuries to Servant" (page 47), states the exception to the rule thus: "The master must exercise due and reasonable care in the selection of his servants, with reference to their fitness and competency"; and on page 55: "The presumption is that the master has exercised proper care in the selection of the servant. It is incumbent upon the party charging negligence in this respect to show it by proper evidence."

In the case at bar the plaintiff raises no question as to the relations existing between him and his helper. It is admitted that they were fellow-servants engaged in a common employment. The allegation which we shall consider is, that defend-

ants did not exercise ordinary care in selecting a reasonably competent man to assist the plaintiff. It is true that the defendants alleged in their answer that, "while the plaintiff and said man were attempting to move said piano, they did, through their own fault and *lack of skill* and attention, allow the same to fall upon and crush the plaintiff's ankle and foot." But the phrase "lack of skill," used in this connection, must be construed to refer to the act of negligence testified to by the plaintiff, and it was evidently so treated at the trial.

The first question to be decided is: What measure of care was required of the defendants in the selection of a man to assist in moving a piano? And in this connection it may be remarked that, if any particular degree of skill is required in moving a piano, that skill, in this case, was furnished by the plaintiff himself. He was the expert in the business, if we may be allowed that expression. He knew how to move pianos; had been engaged for two years in the work, and undertook to instruct the new man as to what was required of him. Those instructions were simple. The assistant was to take the hind end of the piano and be very careful. If these instructions had been followed, the helper would have taken hold of the handles, and held back "with all his might." Plaintiff testified that it requires some skill to move a piano and some experience to acquire that skill. Concede that. Plaintiff himself supplied the skill and experience. All that was required of the helper was strength. That he apparently possessed. McIntosh says he was a strong, robust, and stout-looking fellow, weighing about one hundred and seventy pounds, apparently sober and intelligent. The duty rested upon defendants to exercise ordinary care in the selection of the helper, in view of the nature of the work to be performed. The work required of the assistant was of an ordinary character, not essentially different from any other heavy laborer's work. It was not "hazardous," as distinguished from "ordinary." A physical inspection of the man was all that was necessary to show his competency, unless he was mentally deficient; and McIntosh says he was not. Indeed, the

plaintiff does not claim, in his testimony, that the helper was incompetent. These are his words: "While we two were moving the piano, this man acted all right so far as I could see. When we started the piano down the steps, he just merely let go of it." No inquiry on the part of Jones would have disclosed the fact that the man would neglect to obey McIntosh's orders. A single, exceptional act, like this, will not prove a servant incompetent.

It may be permissible to prove a single act of negligence as bearing upon the question of incompetency of the servant, or, at least, as bearing upon defendant's knowledge of the employee's conduct. The courts differ on this question, and we have no occasion to decide it here. But a single act of negligence, committed after the hiring and without the knowledge of the master, cannot possibly charge the master with lack of ordinary care in selecting the servant. Perhaps this case illustrates the principle of the master's nonliability for the negligent act of a fellow-servant as aptly as any case could. It involves just such an act of negligence, on the part of a coservant, as the master is not liable for, provided he has exercised ordinary care in the selection of the coservant.

In the case of *Harvey* v. *New York C. & H. R. R. Co.,* 88 N. Y. 481, the court said: "He [the negligent employee] was a man of but fifty-six years of age, and there is no suggestion that he was not possessed of ordinary intelligence. The duties of a switchman are not complicated or difficult, and there can be no doubt that on the day in question he was entirely competent to perform the duties imposed upon him. It appears from his own evidence that his failure to close the switch on the day in question did not arise from any inability on his part to perform the work he was set to do, but that such failure was the result of sheer inattention and carelessness on his part." And it was held that his employer was not liable for his failure to close a switch, resulting in the death of a fellow-servant.

This language is employed by the supreme court of New York, in the case of *Burke* v. *Syracuse, B. & N. Y. R. R. Co.,* 69 Hun,

21, 25, 23 N. Y. Supp. 458, 460: "Upon the occasion of the injuries no duty rested upon Clark [a crossing tender] to open the switch. His act in raising the ball and breaking the main track was voluntary, thoughtless, and mistaken. Nothing appears in the case showing that he had not physical power to perform all the acts and duties required of him at the station, or that he was not mentally fit for the position assigned to him by the defendant. * * * The observations made by the learned counsel for the respondent seem appropriate and pertinent where he says: 'The defendant could not make a psychological examination of Clark, or delve into the secret recesses of his brain to ascertain whether, at some future period, he would for an instant become the prey of a delusion and work destruction. It was no more bound to anticipate this unnatural occurrence than it would have been the act of Clark, had he in a moment of temporary aberration drawn a pistol and killed the plaintiff's intestate.'" (See, also, *Baltimore Elevator Co. v. Neal*, 65 Md. 438, 5 Atl. 338; *Huffman v. Chicago, R. I. & P. Ry. Co.*, 78 Mo. 50; *Couch v. Watson Coal Co.*, 46 Iowa, 17; and also *Hatt v. Nay*, 144 Mass. 186, 10 N. E. 807; *Frazier v. Pennsylvania R. R. Co.*, 38 Pa. St. 104, 80 Am. Dec. 467.)

There is no evidence in this case which warranted the jury in finding that any act of neglect on the part of the appellant contributed in any manner to produce the injury to plaintiff.

The judgment and order appealed from should be reversed and a new trial ordered.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.