The non-suit in this case was granted on the ground that, assuming the negligence of the train dispatcher, the plaintiff cannot recover because it was the negligence of a fellow-workman. Whether the train dispatcher bore that relation to the plaintiff is in truth the only question in the case.
The facts are not complicated, and those which we regard as material are as follows: The division upon which the accident happened extends from Dunkirk on the west to Hornellsville on the east. The plaintiff was a fireman on a freight train (number 340), which on the 19th of October, 1887, had started from Dayton and arrived at Salamanca, a station on *Page 419 
defendant's road and within the above-named division, early in the morning on its way east towards Hornellsville, but the train had left Dayton and arrived at Salamanca several hours behind its schedule time, and its movements since leaving Dayton had been entirely controlled by special telegraphic orders from the train dispatcher at his office at Hornellsville.
At 7.57 of the day mentioned the engineer and conductor of this train received while at the Salamanca station an order by telegraph from Hornellsville and signed by the division superintendent and the train dispatcher, which order directed them to "meet trains 341, 339 and 349 at Carrollton ahead of train 348." Carrollton was a station a few miles east of Salamanca. The train consisted of 113 cars and was about half a mile in length and it started to go east as far as Carrollton under the above order very soon, or within a few moments after the order was received. The west-bound train number 341 had arrived at Carrollton several hours behind its regular time, and it was also being run by special telegraphic orders from the train dispatcher's office at Hornellsville. While at Carrollton on its way west, the conductor and engineer of this train received their telegraphic order at 8.43 A.M., which directed them to "meet train 334 at Carrollton, 348 at Salamanca, not pass Salamanca without orders." It was the duty of the conductor and engineer of this train, upon receipt of the order, to move their train west to Salamanca. This they at once proceeded to do.
Neither the engineer nor the conductor has any voice in running a train by special order; they are simply charged with the duty of carrying out the orders that come to them from the train dispatcher's office. These orders to the conductors and engineers of the trains numbers 340 and 341 were at once attempted to be carried out by them, and in consequence thereof the two trains came into collision not far from Carrollton and between 9.05 and 9.10 A.M.
The plaintiff was fearfully injured, his leg being almost torn from his body and he pinned down between the engine and tender and very badly scalded by the hot water from the *Page 420 
boiler of his engine. Amputation near the thigh was soon after performed, and the plaintiff, as might be assumed, suffered great agony from the injury and is rendered a maimed and wrecked individual for the balance of his life. There is no question of contributory negligence in the case, and it cannot be contended that the plaintiff was at the time of the accident engaged in anything other than an honest and careful performance of his duty. If these orders were negligently given, the sole question as to defendant's liability becomes one of law. There was enough evidence as to negligence on the part of the train dispatcher in the giving of the orders to require the submission of the question to the jury, provided the defendant ought to be held liable for his negligence. It frequently becomes very difficult to determine whether the particular act in any case is that of the master in his character as such, or is only that of a mere fellow-servant. It is not a question as to the rank of the individual who gives the order or performs the act. The question is one as to the character of the order or act, whether it is one which is given or performed as an order or act of the master in his character as such, or only as an order or act delegated by the master to another and performed by such other as an employee. The rule as to the liability of the master for the act of a servant is well known. CHURCH, Ch. J., said in the Flike case that the master must be held liable for negligence in respect to such acts or duties as he is required to perform as master, and without regard to the rank or title of the agent whom he has intrusted with its performance. (Flike v. Boston, etc., Co.,53 N.Y. 549.) This language was repeated in Crispin v.Babbitt (81 N.Y. 516), where the liability of the master for the negligence of his servant, by which another servant has suffered injury, was said not to depend upon the doctrinerespondeat superior, but upon the omission of some duty of the master which he has confided to such inferior employee. If the act omitted were of the kind which the master owed to the employee the duty of performing, he would be responsible to the employee for the manner of its performance. *Page 421 
It is not a question of rank among the different employees. The rule thus laid down has been since frequently approved in this court. (Slater v. Jewett, 85 N.Y. 62; Cullen v. Norton,
126 id. 1.) Its application to a particular case is sometimes difficult, and the boundary line between an act of the master and an act of the employee is sometimes quite vague and shadowy. In this case the evidence would seem to be quite conclusive that the defendant had fully discharged the duty which it owed its employees in the way of establishing and promulgating appropriate and sufficient rules and regulations for the government and operation of the various trains upon its road, and its furnishing general time tables pertaining thereto. Whether the train dispatcher violated one or all of such rules is not material in the view we take of the case, because the defendant had not performed its whole duty in promulgating rules, nor is a defense made out when it is shown that if the train dispatcher had obeyed the rules the accident would not have occurred. If the defendant owed a duty as master to give correct orders to these trains, or at least to take due and reasonable care to give them, the failure to perform that duty is the failure of the master in his character as such, although he intrusted the performance of the duty to the train dispatcher.
These trains were being run without regard to their ordinary time tables; they were several hours late, proceeding in opposite directions, and each was approaching the other in entire ignorance of the other's whereabouts. Both were necessarily dependent upon the special orders they received from Hornellsville. As was said in the Slater Case (supra) the master had the right to vary from the regular time schedules laid down for these trains. It was part of the details incident to the operation of the road, but when a variation, or, in other words, when a special time table is made out for two trains by which they are to run, it is the duty of the master not alone to take reasonable care that the alteration shall be made known to the parties interested, but also to take reasonable care that the variation ordered and by which the trains are run shall not *Page 422 
necessarily or probably lead to disaster when obediently carried out. Reasonable care in originating and formulating the order is necessary and is the duty of the master. When the train dispatcher originates and promulgates such orders as were given in this case, he is acting as the master, or, as it is said, hisalter ego, and the master is liable for the negligence of the agent he has employed to do his, the master's, particular work.
In this case it appears that the train dispatcher had his office at Hornellsville for the whole division, and that while he used the name of the division superintendent in giving orders for the movement of trains, yet by the rules they were essentially his orders and signed with his initials in addition to those of the superintendent. It is not claimed that the division superintendent was even bound to know about these movements or special orders. There were three dispatchers at Hornellsville, but there was only one man at a time on duty, and his duty was for eight hours, and while on duty, by a rule of the company, no order could be issued by any other dispatcher. In this way provision was made for full knowledge by each dispatcher of everything going on on his division as to the movement of trains during the time when he was on duty. It is said the accident resulted from a disobedience of these rules, in that the dispatcher, who was about to relinquish his post, sent, at the request of his successor and in his name, the order to the east-bound train at Salamanca, and the successor, forgetting the transmission of such order at his request by the preceding dispatcher, gave the order to the train at Carrollton and bound west, which caused it to move forward and encounter the other train.
If the successor of the train dispatcher, instead of asking the one who was just off duty to send the order to the Salamanca train, had sent it himself, as the rule required, all that can be said is that there might have been more probability of his remembering it, but it cannot be said that his failure to obey the rule in such case was the cause of the accident. The same want of memory might have existed in either case. I do *Page 423 
not, however, lay any weight upon this fact, because, whether the train dispatcher did or did not obey a rule of the defendant, he was acting when the orders were given on this subject as the master and was discharging the master's duties, and if he negligently performed them the master must be held liable therefor. We do not say this duty went further than to use reasonable care, measured by the gravity of the interests at stake, to give originally correct orders. If they were correct, as originally given, and subsequently, through the negligence of some employee, they were incorrectly interpreted, or copied, or mistakenly repeated, or delivered to the wrong person, in these and in many other supposable cases there might, perhaps, be reason for the application of the doctrine as to negligence of a co-employee. It is not so as the case appears here.
In the Flike Case (supra) the accident happened because of the absence of a third brakeman on a train sent out from East Albany. The company had provided a man at that station called a head conductor whose duty it was to make up the trains, and hire and station the brakemen, and on account of one of the brakemen oversleeping himself the train went out without a sufficient number of brakemen. The court held the company had not discharged its duty to send out only a properly equipped train when it provided a head conductor and made rules for his presence there and gave to him a superintendence over the trains. The defendant owed a duty to the employees to send out only such a train, and that duty was not complied with by adopting rules governing such a case. It is also the duty of the company to use care in the furnishing of proper cars and machinery, but the duty is not performed by adopting a rule providing for proper inspection and in furnishing proper persons to perform such inspection, so long as they negligently omit to inspect. Proper inspection of the equipment and machinery of a train is itself part of the duty of the company. (Bailey v. Rome, etc., R.R. Co., 139 N.Y. 302.)
These cases make it plain that whenever the act is that of the master or the duty to be performed is particularly his *Page 424 
duty, the liability resting upon him for the proper performance of the act or duty is not shifted by the adoption of rules or regulations providing for the performance of the act or duty by the agent of the master.
Nor is the holding that a train dispatcher in the dispatch of trains performs for the master a duty which it owes as such, a new departure in the branch of the law under discussion. While the cases cited below do not necessarily proceed upon that basis, yet it is plain that it was in all of them regarded as an indisputable proposition so far as a train dispatcher acted in ordering the movement of trains. In Slater v. Jewett
(supra) it was assumed that the order of the train dispatcher was the act of the master, but it was held that the order was in fact correct and the injury happened from a negligent performance of duty by subordinate servants who were co-employees of plaintiff's intestate (85 N.Y. at pages 66, 70 and 71). The same holds true in the case of Sheehan v. R.R. Co. (91 N.Y. 332 at 337), and Judge DANFORTH there says that no servant takes the risk of an injury by the very act of the master himself. InDana v. R.R. Co. (92 N.Y. 639) a judgment of non-suit in an action brought to recover damages for an injury received in the same accident in which Sheehan (91 N.Y. supra) was injured, was reversed in this court, and upon the same reasoning employed in the Sheehan case. And in Sutherland v. The Troy BostonR.R. Co. (125 N.Y. 737, more fully in 35 N.Y. St. Repr. 853) this court assumes in the opinion there delivered that if the accident occurred from the omission of the train dispatcher at Troy to exercise proper care to notify the train, a case was made out on the question of defendant's negligence.
I think this is a fair and wholesome rule, fair to the master, while at the same time affording some protection to the employee. The defendant ought not to escape liability for negligently issuing as master and in the course of the performance of its duty as such to its employees, an improper order, and whether it has done so should be submitted to the jury.
I have looked at the various cases cited by the learned *Page 425 
counsel for the defendant, and I have found none in this court which conflicts with these views. It is not necessary to cite each one, and criticise it in detail. It is sufficient to say they do not conflict with our decision in the case at bar.
The judgment should be reversed and a new trial granted, costs to abide the event.
All concur, except GRAY, J., not voting.
Judgment reversed.