CHARLES K. BRYANT, Plaintiff, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Defendant.

*Railroad company — its duty and liability as to rules and their enforcement.*

Where a railroad company has, by its rules, done all that could be reasonably required of it for the safety of its employees, in the operation of trains upon its road, the execution of the rules is a matter of detail to be observed by the employees, and no liability of the company results, in favor of one of the employees, from the consequences of the fault of another employee in failing to obey such rules.

The serious consequences liable to result from the collision of one running train with another impose upon a railroad company the duty of using all reasonable and practicable precautionary means to avoid such an accident.

Although an accident and injury to an employee may be attributable to the negligence of an employee of a railroad corporation in not observing the rules of the company while running a train, if negligence on the part of the company to any material extent co-operates with that of such employee in producing the accident, the company may be chargeable in damages.

MOTION by the plaintiff, Charles K. Bryant, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance, upon a nonsuit granted by the court after a trial at the Monroe Circuit, before the court and a jury, on the 23d day of February, 1894.

The action was brought to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant. The plaintiff was a locomotive engineer in the service of the defendant. On the evening of April 4, 1893, he received from the division superintendent of the defendant a telegraphic order to run engine 565 extra from East Rochester to Canandaigua. The order was addressed to the conductor and engineer having charge of that engine and a freight train of twenty or thirty cars. That line of the road was a single track. The plaintiff's train left East Rochester at five minutes past ten. On arrival at Brighton he received another telegraphic order to meet No. 45 at Pittsford, a regular train bound west due there at twenty minutes past ten. The train was met at Pittsford. He then proceeded to Fishers. There the engineer of 23, a regular train going west, delivered to the plaintiff a telegraphic order as follows :

" For Victor. To C. & E. of No. 69 Victor Eng. 565, Care of C. & E. No. 23.

" Extra Eng. 565 East has right of track against No. 69 Pittsford to Victor. H. G. Time received 11.35 P. M. O. K. Given at 11.36 P. M. by M."

No. 69 was a regular freight train going west. Its leaving time at Canandaigua was forty minutes past eleven. It left there about forty minutes late. The plaintiff, with his train, proceeded east, and was delayed on the way by the breaking of the injector of his engine. Arrived at Victor at half-past twelve and stopped his engine about 300 feet west of the depot. The water was then low in the boiler, and he cut it from the train, ran it to a tank about 200 feet east of the station, sent flag forward, took supply of water and returned to train, coupled on the engine, and was about proceeding to draw the train on to the side track when the headlight of engine 69 came in sight, and not having time to get his train from the main track, proceeded to jump from his engine as that of No. 69 collided with it, and he was injured. The further facts appear in the opinion. The plaintiff was nonsuited.

*Eugene Van Voorhis,* for the plaintiff.

*Edward Harris,* for the defendant.

Bradley, J. :

The main question is whether or not there was any support in the evidence for the charge of negligence against the defendant as a contributing cause of the injury suffered by the plaintiff. The train drawn by engine 565, run by the plaintiff, was an extra one, and was run upon special orders. The conductor and engineer were advised by the time table when regular trains were due at stations, and unless directed to run upon the time of such trains, they had to keep out of the way of them. When they received at Fisher's Station the telegraphic order addressed to the conductor and engineer of train 69, that the plaintiff's train had the right of track against No. 69 from Pittsford to Victor, neither the plaintiff or his conductor observed that it was addressed to 69 at Victor. They, therefore, did not learn from it that the engineer of 69 was to receive the order at that place. But that fact does not seem very important. The effect of the order was that the plaintiff's train and 69 would meet at Victor. And it was his business to proceed with his train to that place. If he had noticed that the order was addressed to those upon train 69 at Victor the plaintiff might have had reason to suppose that the engineer of that train would not receive it until he reached there. In fact neither the conductor or engineer of train 69 had any information that it would meet the extra 565 at Victor before the collision occurred, and it may be assumed that if they had been advised of the order at any station before they reached there their train would have been under control and the accident avoided. The omission to give timely information of the order to the conductor or engineer of 69 is the fact upon which the plaintiff seeks to predicate the charge of negligence of the defendant, and such may be the reasonable inference unless by the force of a system of rules and regulations, then existing for the guidance of those running trains, the defendant is necessarily relieved from that imputation. Victor was a signal and water station, and was known to the railroad men as an order board station. By rule 61 of the company it was provided that "all trains or engines approaching stations * * * where signals are located must do so expecting to find them at danger, and must be prepared to stop in accordance with instructions governing them." By another rule it was declared that "red signifies danger and is a

signal to stop." And by rule 125 it was further provided that "all trains must approach the stations with care, and freight trains must approach water stations slowly and cautiously, always expecting to find a preceding train there." It is provided by rule 121 that "no regular freight train must exceed the table time." The distance from Canandaigua to Victor is nine miles, and, as appears from the company's time card, the time to be occupied by freight train No. 69 in running it was thirty-five minutes. This would give the average speed of about fifteen and one-half miles per hour. If the engineer of the train had complied with the rules of the defendant it is quite evident that the accident would not have happened. He saw the flagman's signal 1,400 feet east of the station, and about the same time he was also able to see the red light signal at the station, which required him to stop there. But then his train was running at the rate of twenty or twenty-five miles per hour, down grade. The consequence was that with all the means he was able to apply to slack the speed of the train it was reduced only to the rate of fifteen miles per hour when it struck the plaintiff's engine.

To approach the station at such speed was a violation of the rules of the company before mentioned which required the engineer to have his train under his control. Not apprehending any signal to stop at Victor, and not being aware of any business requiring it, the engineer did not intend to stop there.

The train 69 left Canandaigua forty minutes late and was behind time at Victor. But, as this was an order and signal station, it was the duty of the engineer to have the train under his control when it approached there, and be prepared to observe and obey the order to stop as the signal there required. The proposition of the defense is that while the injury may have been the consequence of the negligence of the engineer of train 69, there was no fault on the part of the defendant contributing to it because it had furnished by rules a system which if observed by those running the moving train the calamity would have been avoided. That, if sustained by the evidence, is an answer to the charge against the defendant. If it had by its rules done all that was reasonably required of it for the safety of the employees in the operation of trains upon the road, having in view also the circumstances appearing in the case at bar, then the execution of the regulations was a matter of detail to be observed

by them, and there is no liability of the company in behalf of one of the employees for the consequences of the fault of another of them in failing to obey them. (*Slater* v. *Jewett,* 85 N. Y. 61; *Byrnes* v. *Railroad Co.,* 113 id. 251.)

An extra (such was the plaintiff's train) is not upon the time card. It is inferior in class to all regular trains and must, at places of meeting them, take the branch or side track. The plaintiff's engine reached the point of divergence from the main to the side track about 300 feet west of the station, and but for the want of water in the boiler would have passed on to it in time to have escaped the accident. The conductor and engineer received telegraphic orders to run from one station to another. The last order received by them was that their train had the right of track against 69 from Pittsford to Victor. It seems that no order to that effect was sent to the conductor or engineer of 69, although it might conveniently have been, as that train was some time at Canandaigua and did not leave there until twelve-twenty. But the purpose was to give them the order at the station where the trains were to meet, and until then they were not advised that the order was awaiting their arrival at that place.

The serious consequences liable to result from collision of one running train with another impose upon the company the duty of using all precautionary means reasonably practicable to avoid it. While there is some evidence indicating that there were rules of the company relating to the subject of running trains under telegraphic orders, it does not appear by the evidence what they were. It may here be assumed, therefore, that the matter of furnishing special orders for the running of extra trains is left to the telegraphic dispatcher under the general direction of the superintendent. And for the consequences of any want of due care on his part in that respect the company may be responsible. (*Hankins* v. *Railroad Co.,* 142 N. Y. 416.) While the collision may be deemed attributable to the negligence of the engineer in not observing the rules of the company in running train 69 into Victor, if the defendant's negligence to any material extent was co-operative with that of the employee in producing the result complained of, the defendant may be chargeable for it. (*Ellis* v. *Railroad Co.,* 95 N. Y. 546; *O'Laughlin* v. *Railroad Co.,* 9 N. Y. St. Repr. 384; 113 N. Y. 623.)

It would have been a precautionary act, neither unwise nor unreasonable, for the dispatcher to have sent a copy of the order to the conductor or engineer of train 69 at some station east of Victor. But if the rules of the company were reasonable and adequate for the purpose of preventing the calamity in question, and it was occasioned solely by the failure to observe and execute them, it is difficult to see that anything further was required of the company in the matter, and the effect of sending the order to the persons in charge of the running train would have been to advise them to observe the existing rule which required the engineer to have the train under his control in approaching the Victor station. There is evidence tending to prove that it was the custom or practice of freight trains on the road when behind time not to stop at stations where they had nothing to do. This fact is urged as a reason why the officers of the company had some reason for apprehension that an earlier receipt of the order by the engineer of the approaching train was but a reasonable precaution, and that it might be essential to the protection of those having charge of the trains.

This would be so if it had been the custom to run such trains into and past stations otherwise than at such reduced speed as to have them under control as provided by the rule before mentioned. But, so far as appears, there is nothing in the rules requiring freight trains to stop at stations where there is no service for them, unless signaled to do so. Nor is the fact that such custom or practice existed, inconsistent with the requirement of the rule, that when approaching stations where signals are located, they must do so expecting to find them at danger, and must be prepared to stop in accordance with instructions governing them. The engineer was advised of that and the other rule before mentioned. And the collision was the consequence of his violation of them, and his negligence the cause of the plaintiff's injury. Nothing appears to warrant the inference that there was any occasion for apprehension on the part of the defendant that the rules of the company might not be effectually observed in running train 69 into Victor. If they had been obeyed, no injury would have been done. The conclusion logically follows that it was caused by the negligence of the plaintiff's co-employee, without any negligence on the part of the defendant.

The motion for a new trial should, therefore, be denied and judgment upon the nonsuit directed for the defendant.

Dwight, P. J., Lewis and Haight, JJ., concurred.

Plaintiff's motion for a new trial denied, with costs, and judgment ordered for the defendant on the nonsuit.