## LARKIN v. WASHINGTON MILLS CO.

(Supreme Court, Appellate Division, Second Department. November 28, 1899.)

1. MASTER AND SERVANT — ELEVATOR ACCIDENT—NEGLIGENCE—QUESTION FOR JURY.
    A spring intended to automatically lower a gate in front of the shaft of an elevator used by plaintiff while acting as porter for defendant was left out of repair by defendant for three weeks after being notified thereof, and it resulted in plaintiff's injury. Held, that defendant's negligence was for the jury.

2. SAME—DEFECTIVE APPLIANCE—NOTICE.
    That a servant knew that an appliance was out of order three weeks before he was injured by it did not relieve his master from using reasonable care to keep it safe.

3. SAME—NOTICE TO MASTER.
    Where a shipping clerk had charge of employés, and directed the use of an elevator by plaintiff while a porter for defendant, and under the clerk's direction, notice to the clerk of a defect in the elevator which injured plaintiff was notice to defendant.

**4. SAME—REPAIR—SERVANT'S RIGHT TO ASSUME.**

The gate to an elevator used by plaintiff while employed as porter for defendant, under the direction of a shipping clerk, who directed the use of the elevator, was out of order, and plaintiff informed the clerk thereof, and he said that carpenters were coming to fix the hatch, and that he would have the gate attended to. Thereafter, for several weeks, plaintiff did not use the elevator, but in the interval he had seen lumber on the premises, and was told that carpenters were at work. *Held,* that he might reasonably assume that the gate had been repaired.

**5. SAME—ACT OF THIRD PERSON—EFFECT ON MASTER'S LIABILITY.**

Where a servant was injured because of a defective appliance which the master should have repaired, the latter is not relieved from liability because a proximate cause of the accident was the act of a third person, if it would not have occurred but for the failure to repair.

Goodrich, P. J., dissenting.

Appeal from trial term.

Action by James F. Larkin against the Washington Mills Company for a personal injury. Plaintiff was nonsuited, and he appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles J. Patterson, for appellant.

Robert Thorne (Frank V. Johnson, on the brief), for respondent.

WOODWARD, J. The plaintiff, a man 32 years of age, was employed by the defendant in sorting and shipping goods from 74 and 76 Worth street, New York. The building is a five-story structure, the defendant occupying the ground floor, basement, subcellar, and fourth loft, the other lofts being used by tenants. The building was equipped with a steam elevator running from the subcellar to the last floor, but, being a freight elevator, no one was regularly employed to operate it, each of the several tenants making such use of the elevator car as their business might require. The elevator shaft was in the front portion of the building, opening upon the street, and, for the purpose of guarding against accidents at this point while the elevator was in use, a gate had been contrived which was raised by hand when the elevator car was at the street level, but which automatically fell and closed the street front of the elevator shaft when the car was removed. The plaintiff was not regularly employed as a porter, but was under the direction of the shipping clerk, who, at intervals, would send the plaintiff to the street to bring in packages of goods. On these occasions the elevator was used, by the direction of the shipping clerk, and about three weeks prior to the accident—accepting, as we are bound to for the purposes of this appeal, the plaintiff's version—the plaintiff, in using the elevator, discovered that the spring which had been contrived to let the gate fall when the elevator car was removed from the street level was out of order, and did not work as it was designed to do. After releasing the gate by hand, the plaintiff went to the shipping clerk, and informed him of the fact that the spring was out of order, and the shipping clerk replied that some carpenters were coming to make some repairs in a day or two, and that he would have them fix the spring. A few

days later plaintiff saw some lumber in front of the building, and was told that the carpenters were at work. Two or three weeks subsequently the plaintiff was directed by the shipping clerk to go to the street, and bring in a bale of goods which had been deposited there. He took the elevator car to the ground floor, raised the gate and fastened it, went out and loaded the bale of goods upon a low truck, pushed it around in front of the elevator shaft, and stopped and looked to see if the car was still in position. The package weighed about 800 pounds, and it was necessary to push it up an inclined plane to reach the elevator car. It was large and bulky, and in order to move it the plaintiff was obliged to get down behind it, and push with all his weight. This shut off his view of the elevator shaft, and during the time that he was pushing this loaded truck a distance of 15 or 20 feet some one, without giving any warning which the plaintiff heard, moved the car to another position in the building. The gate, which was designed to drop whenever the elevator car passed a few feet in either direction, failed to operate, and the plaintiff was precipitated, with his load, to the subcellar, sustaining the injuries for which he now seeks to recover. On the trial the learned court granted a motion for a nonsuit upon the ground that the plaintiff knew of the defect in the spring, and that he assumed the risk arising from that condition. The plaintiff appeals to this court, and urges that the learned trial court erred in granting the motion for a nonsuit,—a contention which we think to be sustained by the facts in this case.

Where the dangers of an employment are known and obvious, the servant may be fairly said to have contracted with reference to the risks which are incident to the work; but the master is at all times charged with the duty of exercising reasonable care to provide the employé with a safe place in which to work, and safe tools and appliances. The duty to furnish safe tools and appliances is not an absolute duty, but is satisfied by the exercise of reasonable care and prudence on the part of the master in the manufacture, selection, and repair of such appliances. Probst v. Delamater, 100 N. Y. 266, 272, 3 N. E. 184. "This is a duty," continues the court, "which cannot be delegated to a servant so as to excuse the master from damages occurring through an omission to perform it; yet, when the master has exercised all of the care and caution which a prudent man would take for the safety and protection of his own person, the law does not hold him responsible for a defect which could not be discovered by careful inspection, or the appliance of appropriate tests to determine its existence." Had the master, in the case at bar, met this requirement of the law? Had he exercised that care and caution which a prudent man would take for his own safety and protection? Obviously, this is not a question of law, but of fact. It was for the jury to say whether the master, in permitting this defective spring to remain three weeks after he should have known of its defective condition, had exercised that reasonable care which it was his duty to exercise in providing this plaintiff with safe appliances. The fact that the plaintiff knew the spring was out of order three weeks be-

fore did not modify the contract between the master and servant. It did not relieve the master from the duty of using reasonable care in furnishing safe appliances, and, under the circumstances of this case, notice to the shipping clerk, who had charge of the employés and who directed the use of the elevator, was notice to the employer. Hankins v. Railroad Co., 142 N. Y. 416, 422, 37 N. E. 466, and cases there cited; Tomaselli v. Cycle Corp., 9 App. Div. 127, 41 N. Y. Supp. 51. There was evidence in the case that the spring had been out of order for a period of three months or more; that it worked at times, and at other times did not; and it may be questioned whether this was not sufficient to have charged the master with negligence, independent of any specific notice.

There is a plain distinction between the case at bar and McCarthy v. Washburn, 42 App. Div. 252, 58 N. Y. Supp. 1125. Here the jury were authorized to find, if they believed the testimony of the plaintiff, that he supposed, and had reason to suppose, that the promise made by the defendant's supervising shipping clerk that the gate would be repaired had been fulfilled before the plaintiff undertook the work which resulted in the accident. Mr. Muldoon. the shipping clerk, when the plaintiff complained to him about the condition of the gate and the failure of the spring to act, told the plaintiff that carpenters were coming to fix the hatch, and that when they came he would have the gate attended to. Between that time and the occasion of the accident, the plaintiff had not used the elevator on the ground floor, where the gate was. In the interval he had seen lumber on the premises, and had been told that carpenters were working upstairs. Under these circumstances, the plaintiff might reasonably assume that the promise of the shipping clerk in reference to repairing the gate had been carried out, or, at least, a jury could so find. In McCarthy v. Washburn, however, there was no room for any such inference on the part of the plaintiff. He was digging in a sandbank under conditions which he had already recognized to be dangerous. He knew perfectly well, notwithstanding the assurances which he had received from his employer, that his employer had done nothing whatever to secure the bank or lessen the peril; and, furthermore, by himself continuing the process of undermining the bank in which he was at work, he constantly augmented the danger to which he was exposed. A glaring case of recklessness was thus presented, in which there was no room for doubt that the plaintiff had brought upon himself the injury of which he complained, while here the acts of the plaintiff may be capable of a view which would free his conduct from the reproach of imprudence.

It is urged by the defendant that the proximate cause of the accident was the moving of the elevator by some third person, without giving warning. and that the defendant cannot, therefore, be charged with negligence because of the defective spring. While it is probably true that, if the elevator had not been moved, the accident would not have occurred, it is equally true that if the gate had operated as it was intended to do, and as it did operate when the spring was in order, the plaintiff would not have fallen into the

elevator shaft; and when several proximate causes contribute to an accident, and each is an efficient cause, without the operation of which the accident would not have occurred, it may be attributed to all or to any of the causes. Ring v. City of Cohoes, 77 N. Y. 83.

The judgment appealed from should be reversed with costs. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. I dissent from the prevailing opinion, on the ground that I find no evidence to justify the theory that the defendant was bound to keep in repair the elevator and gate, or that Muldoon was the defendant's alter ego.