and the first narrative would naturally be more artless and spontaneous, given as it was before it was subjected to the test of criticism, and before its fatal effect on his chances of recovery had been revealed on the former appeal.

In my opinion, in view of the irreconcilable variance between the two statements, the latter given as it was after plaintiff's mind had been illumined as to the nature of the testimony essential to a recovery, the plaintiff did not sustain the burden of proof on this branch of the case. This in the first instance was, of course, a question for the jury, but the verdict of a jury is subject to judicial review, and, when the court can plainly see that the verdict rests on no substantial basis, such verdict should be set aside. In passing on this important question, the jury had before them absolutely nothing, save two contradictory statements of the plaintiff, each sworn to under similar circumstances, except that the last statement which was accepted by the jury was made under circumstances tending to throw doubt and suspicion thereon. Who among us is gifted with such subtle discernment as to be able to say that the last statement rather than the first comports with the true version of the occurrence? These two conflicting statements should be clearly placed in juxtaposition before the minds of a jury, and their attention should pointedly be called to their apparent irreconcilability, and to the circumstances under which they were, respectively, given, and in such a manner that the question thus presented is not minimized or obscured by other questions in the case, so that the verdict of the jury, if in plaintiff's favor, may clearly and beyond peradventure carry with it the expression of their belief that the latest statement of the plaintiff is the true one, notwithstanding the apparent probabilities to the contrary. The defendant's motion for a new trial should have been granted.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event.

---

(118 App. Div. 441)

## BALDWIN v. SCHENECTADY RY. CO.

(Supreme Court, Appellate Division, Third Department. March 13, 1907.)

1. APPEAL—REVIEW—DISMISSAL OF COMPLAINT.
   On appeal from a judgment dismissing the complaint at the close of plaintiff's evidence, plaintiff is entitled to the most favorable inferences properly deducible from the evidence.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3748.]

2. MASTER AND SERVANT—ELECTRIC RAILROADS—NEGLIGENCE—PERSONAL INJURIES—CHANGE IN RUNNING TIME—EVIDENCE.
   In an action against an electric railroad for injuries to a motorman received in a collision, it was properly *held*, on motion for a nonsuit, that evidence that, though the published schedule running time between two points was one hour, yet the all-night car which plaintiff was operating when injured had for about a year been making the trip during certain hours of the night in 45 minutes, and that defendant's assistant superintendent, who directed the movements of cars, when asked by plaintiff for instructions as to making the trips in 45 minutes referred the latter

to the conductor, who instructed plaintiff to make the trips in 45 minutes—tended to show that defendant had changed the running time.

3. SAME.

In an action against an electric railroad for injuries received in a collision between the car of which plaintiff was motorman and a work car, evidence that for several days prior to the accident the conductor of the work car had seen plaintiff's car arrive ahead of the published schedule time, which, according to defendant's rules, it was such conductor's duty to follow, did not tend to show knowledge on the part of the conductor of the work car that the running time had been changed by defendant.

4. SAME—DUTY OF RAILROAD.

Where, while making repairs in its line, an electric railroad began to operate its cars in opposite directions over the same track, it was charged with the duty of guarding the safety of its employés by giving notice of a change in the running time of its cars.

5. SAME—QUESTION FOR JURY.

In an action against an electric railroad for injuries received in a collision between the car whereof plaintiff was motorman and a work car, resulting from a change of the running time of plaintiff's car, the question of defendant's negligence in failing to notify its employés of the change was for the jury.

6. SAME—CONTRIBUTORY NEGLIGENCE.

In an action against an electric road for injuries received in a collision between the car whereof plaintiff was motorman and a work car, the fact that plaintiff failed to inform his conductor that the headlight of his car had gone out, and that, being unable to adjust it, he had replaced it with a red lantern, did not show contributory negligence on plaintiff's part; it not appearing what the conductor would or could have done that was not done by plaintiff.

Appeal from Trial Term, Schenectady County.

Action by Charles E. Baldwin against the Schenectady Railway Company. Judgment for defendant, and plaintiff appeals. Reversed.

Argued before SMITH, P. J., and CHESTER, COCHRANE, and SEWELL, JJ.

Lee & Senior (A. G. Senior, of counsel), for appellant.
Daniel Naylon, Jr., and Edward C. Whitmyer, for respondent.

COCHRANE, J. The defendant operates a double-track electric railroad between Albany and Schenectady. The plaintiff, being in the service of the defendant as a motorman, was injured in a collision which occurred between 4 and 5 o'clock in the morning of September 5, 1903. Asserting that the collision was occasioned by the defendant's negligence, he seeks by this action to recover damages for such injuries.

At the time of the accident, and for several weeks prior thereto, and for a distance of a little more than half a mile near the Schenectady terminus of the road, one of the tracks had been removed for the purpose of making repairs, and consequently at such time and place cars were being operated in both directions over one track. The collision occurred on this single track between a passenger car operated by the plaintiff, traveling toward Schenectady, and a work car, traveling in the opposite direction. The rules of the defendant provided that conductors and motormen should receive their instructions from the super-

intendent or his authorized representative; that the motormen were under the directions of the conductor and should obey his orders so far as reasonable; that conductors and motormen should conform to time-tables in running cars and be particular in making time points as laid out on the time cards; that time-tables would be posted at all stations for the government and information of employés; that employés would receive notice of temporary changes of time-tables by the posting thereof at all stations; that they were expected to keep themselves posted concerning current time-tables and all changes thereof; that new time-tables would be posted on the day previous to their becoming effective; that temporary changes of time-tables were likely to occur at any time; that special instructions would be issued from time to time as might be necessary, and that such instructions posted on the various bulletin boards whether in conflict with the rules or not should be fully observed; that bulletin boards should be consulted before starting and at the end of each day's work; and that employés should always have a copy of the rules at hand while on duty and be familiar therewith. According to the time-tables as published by defendant, the running time between Albany and Schenectady was one hour. There is evidence, however, that for about a year prior to the accident a car known as the "all-night car" had been accustomed between 12:45 and 6:45 o'clock in the morning to make the trips from Albany to Schenectady in 45 minutes. No change was made in the time-tables as published, nor, so far as appears, was any information promulgated as to the change in the running time of this car. About three weeks before the accident plaintiff was assigned to this all-night car by the assistant superintendent of the defendant, who was accustomed to give instructions to the motormen and conductors as to the movements of cars. Plaintiff testified that he at that time asked the assistant superintendent about the car making the trips in 45 minutes, and was by him referred to the conductor of the car for instructions; that the conductor told him to make the trips in one hour until 12:45 in the morning, and from that time until 6:45 in 45 minutes. Plaintiff immediately began making the trips pursuant to such instructions, and continued to do so until the accident. According to the 45-minute schedule he was due at the place where the accident occurred.

The complaint having been dismissed, the plaintiff is entitled to the most favorable inferences properly deducible from the evidence. From the evidence that this all-night car for about a year had been accustomed between 12:45 and 6:45 o'clock in the morning to make the trips from Albany to Schenectady in 45 minutes, and from the plaintiff's testimony that the assistant superintendent of the defendant, who gave directions as to the movements of cars, when applied to by plaintiff for instructions as to making the trips in 45 minutes, referred the latter to the conductor, who instructed plaintiff to so make the trips in 45 minutes during the morning hours as aforesaid, it would have been a proper inference by the jury that the defendant had authorized or was responsible for such change in the running time from one hour to 45 minutes. The learned trial justice properly held on this branch of the case that the evidence tended to show that the running time of this car had been changed by the defendant. He seems, how-

ever, to have been influenced in dismissing the complaint by the idea that there was no evidence that the crew of the work car had not been apprised of the change in the running time of plaintiff's car, or that such crew was proceeding on the theory that plaintiff's car would not arrive at the time and place of the accident. On the contrary, both the conductor and motorman of the work car testified that they had received no notice that the all-night car was being operated on the 45-minute schedule. It is true that, after the learned trial justice had indicated the disposition which he thought should be made of the case, the conductor of the work car was recalled, and testified that for several days prior to the accident he had seen plaintiff's car arrive ahead of the published schedule time; but that did not tend to show knowledge on his part that the running time had been changed by defendant. It was his duty to proceed according to the time-tables as published according to the defendant's rules. His natural inference would be that plaintiff was running ahead of time, and not that the running time had been changed. He testified that, according to the schedule time as published, the work car would have passed over the single track before plaintiff's car was due to arrive.

Of course, as long as defendant operated its cars over double tracks throughout the entire length of its road, there was little or no danger of an accident such as the one in question; but, when it began to operate its cars in opposite directions over the same track, a new situation was created, fraught with additional dangers to its employés. It then became the duty of the defendant to take reasonable precautions to protect its employés commensurate with such unwonted danger. It was incumbent on the defendant either by the promulgation of time-tables or by other suitable methods or regulations to operate its cars with a view to the safety of its employés. Rose v. Boston & Albany Railroad Company, 58 N. Y. 217, 221; Slater v. Jewett, 85 N. Y. 61, 71, 39 Am. Rep. 627. In Hankins v. New York, Lake Erie & Western Railroad Company, 142 N. Y. 421, 37 N. E. 466, 25 L. R. A. 396, 40 Am. St. Rep. 616, it is said:

"It is the duty of the master, not alone to take reasonable care that the alteration shall be made known to the parties interested, but also to take reasonable care that the variation ordered and by which the trains are run shall not necessarily or probably lead to disaster when obediently carried out. Reasonable care in originating and formulating the order is necessary, and is the duty of the master."

In the cases cited variations had been made in the schedule time in particular instances, and for special reasons, but the principle certainly holds equally good where, as in this case, a permanent change in the schedule had been effected.

The rules of the defendant as published were all that could be required. The defendant can be subjected to no unfavorable criticism because of the inadequacy of the rules. Its culpability rests in the fact that it disregarded and violated its own rules, if as the jury might have found it changed the schedule time of the plaintiff's car while not publishing such change or giving notice thereof in any manner to its employés. Plaintiff, of course, knew that no change had been made in the schedule time as published; but he had a right to assume that

in some other way the defendant was observing the duty which it owed him. The evidence is that prior to 12:45 o'clock in the morning men with signals were stationed at each end of the single track to guard against just such an accident as this. Plaintiff might properly assume that in some other appropriate way some means were being taken by defendant to protect him from such an accident. During all the time that this car was being run on a 45-minute schedule the defendant through its published time-tables was informing its employés that the running time was one hour, and seems to have taken no precaution to counteract the information thus promulgated. I think the question of defendant's negligence should have been submitted to the jury.

While making the trip in question the headlight attached to plaintiff's car went out. He stopped, attempted without avail to adjust it, hung out a red lantern in place thereof, and then proceeded. It is now claimed that he was negligent in not informing his conductor of the absence of the headlight. There is no suggestion as to what the conductor would or could have done which was not done by plaintiff, nor is it apparent how this negligence of the plaintiff, if such it was, contributed to the accident.

The judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event.