## GIBBONS v. LEHIGH VALLEY R. CO.

(Supreme Court, Trial Term, Erie County.  September 10, 1910.)

1. MASTER AND SERVANT (§ 185*)—INJURIES TO SERVANT—VICE PRINCIPAL.
   The negligence of a train dispatcher in giving to an engineer a clearance card that his train had a clear track, when there was a pile of snow thereon which derailed the engine, is chargeable to the railway company.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 411–413; Dec. Dig. § 185.*]

2. TRIAL (§ 139*)—EVIDENCE—QUESTION FOR JURY.
   The jury will not be permitted to guess as to which of two equally probable causes produced an accident, for one of which causes only there was a legal liability.
   [Ed. Note.—For other cases, see Trial, Cent. Dig. § 338; Dec. Dig. § 139.*]

3. MASTER AND SERVANT (§ 276*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.
   In an action for injuries to an engineer by the derailment of his engine by snow on the track, evidence *held* to justify a finding that the derailment was caused by the negligence of the train dispatcher in giving to the engineer a clearance card without warning him to look out for obstructions caused by snow on the track.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 970; Dec. Dig. § 276.*]

4. TRIAL (§ 105*)—EVIDENCE—VERDICT.
   Where a fact was assumed by both parties at the trial, and no exception was taken to the charge assuming the fact, the omission of proof of the fact was not fatal to the verdict.
   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 260–266; Dec. Dig. § 105.*]

Action by Richard Gibbons against the Lehigh Valley Railroad Company.  Motion by defendant for nonsuit or for a new trial on exceptions and for direction of verdict for defendant after rendition of a verdict by the jury for plaintiff for $7,500.  Denied.

See, also, 122 App. Div. 87, 106 N. Y. Supp. 543.

C. M. Bushnell, for plaintiff.
Daniel J. Kenefick, for defendant.

SUTHERLAND, J.  The plaintiff, a locomotive engineer in the employ of the defendant, was running a passenger train from Buffalo to Suspension Bridge on the night of February 5, 1904.  He had received a clearance card emanating from the train dispatcher, to the effect that his train had a clear track; and he was running at a rapid rate when, he testifies, at a point south of Tonawanda, he encountered a pile of snow on the track, which derailed the engine, and the plaintiff was severely injured.  Several days before this, the snow had drifted upon the tracks at the place of the accident to a depth of from 3 to 6 feet, and for about 1,200 feet in length.  That portion of the road is double tracked.  The west-bound track had been cleared of snow, and was used by both east and west bound trains.  The east-bound track was covered with snow of the depth and length mentioned,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and a witness who passed the point in question late on the afternoon of the 5th says he walked on the top of the snow bank covering the east-bound track, and that the drift was very hard. The sides of the cut in the snow where the west-bound track had been cleared by the rotary snowplow were nearly perpendicular; the bottom of the bank being from 18 inches to 2 feet from the rail on each side. On the night of the 5th, plaintiff left Buffalo for Suspension Bridge shortly after a train from the Bridge arrived at Buffalo; and he came to the stretch of track where the draft in question was, and was running rapidly when he says he discovered a pile of snow on the track just ahead, into which the engine plunged and was derailed and plaintiff severely injured. Just before the snow pile was reached, he says he passed the snowplow, which he did not know was operating in that section.

Evidence was given to the effect that where snow has drifted deep on a double track, and one track has been cleared, in the ordinary operation of the rotary as it cuts through the bank to clear the other track, there is a lateral vibration which is apt to throw upon the clear track the core of snow, or a portion of it, left in the section between the two inner rails not reached by the knives of the rotary; and also, if the knives in the rotary become clogged with snow, the snow bank ahead of the plow will be rammed so as to force the snow out sidewise onto the clear track; and by either of these methods snow may be deposited on the clear track in sufficient quantities to make it dangerous to attempt to run a train through at a high speed. The deposit of snow by either of these methods on the clear track is not the result, necessarily, of negligence on the part of the crew operating the rotary. It is a liability constantly present under such conditions while the rotary is being carefully operated. The finding of negligence in this case is predicated, not upon any fault of the crew operating the rotary, but upon the failure of the train dispatcher to notify the plaintiff that the snowplow was working in that section. Ignorant of the fact, the engineer approached at high speed, supposing the track was clear in accordance with his advices from the train dispatcher, and the engine was derailed by the shock; whereas, if the engineer had been advised that the plow was in that vicinity, he would have approached slowly and escaped injury.

It was shown that it was the custom of the defendant to notify engineers when they were likely to meet or pass a snowplow; but no such notice was given in this instance, and the negligence of the train dispatcher is chargeable to the defendant. Hankins v. N. Y., L. E. & W. R. Co., 142 N. Y. 416, 37 N. E. 466, 25 L. R. A. 396, 40 Am. St. Rep. 616. The court charged the jury that, if the snow came on the track through the negligence of the crew operating the rotary, the plaintiff could not recover.

Just how the snow came upon the west-bound track can only be inferred from the evidence as to what generally occurs under similar conditions. If any one could tell, from actual knowledge, how the snow came upon the west track, he was not called to testify by either party. It had been deposited there only a short time, as another train had passed over the track a little while before. The snow must have

come either from the outside bank between the west-bound track and the fence, or from the inside where the rotary was operating. A witness was asked by plaintiff's counsel to describe the appearance of the banks on the morning after the accident. The question was objected to and the objection was overruled; but the plaintiff's counsel concluded to withdraw the question. The testimony might have eliminated the outside bank as a possible source of the snow which caused the derailment; and the absence of evidence as to the condition of the outside bank after the accident seems to me to present the most serious difficulty in the case; for, if the snow came from the outside bank, its fall cannot be attributed to the presence of the snowplow, and there would be no liability on the part of the defendant; and the jury should not be permitted to indulge in guesswork as to which of two equally probable sources the snow came from; but I conclude, although with some hesitation, that the evidence as to the hardness of the outside bank late that afternoon, and as to the frequency with which snow is cast onto the clear track by the ordinary operation of the plow through snow of that height, sustains the conclusion of the jury that the snow which derailed the engine did not come from the inside bank in that manner, and that plaintiff's injury is legally attributable to the failure of the train dispatcher to warn plaintiff to look out for the rotary.

A point is now made for the first time that there is no evidence in the record that the rotary and plaintiff's engine were proceeding in opposite directions; but this, apparently, was assumed by every one at the trial, and no exception was taken to that portion of the charge of the court in which it was stated as a fact that the plow and plaintiff's engine were so proceeding. Under these circumstances, it does not seem just that the omission of specific proof of the fact should be considered fatal to the verdict.

This case was submitted substantially upon the evidence offered on behalf of the plaintiff; the defendant's case consisting only of certain records of former trials. Some things in the plaintiff's own testimony seem open to doubt; but the defendant chose not to put upon the stand any witness who was present at the time to contradict the plaintiff or to give any other version of the accident, and I do not feel constrained to disturb the verdict.

The defendant's motions for a nonsuit, for a new trial, and for a direction of verdict in its favor are severally denied, with $10 costs.